[No. 18875.  Department One.  December 18, 1924.]

ANNIE K. RUSSELL, *Respondent*, v. FRED J. DIBBLE, *as Director of Licenses, Appellant.*[1]

MANDAMUS (3)—WHEN LIES—ADEQUATE REMEDY BY APPEAL. Mandamus does not lie to compel the director of licenses to grant a physician's application for a license to practice medicine, in view of the adequate remedy for appeal to the courts, provided by Rem. Comp. Stat., § 10017, of the act regulating the practice of medicine, and Id., § 10864, of the administrative code, granting the right of appeal from any decision of the director of licenses.

PHYSICIANS AND SURGEONS (4-1)—RIGHT TO PRACTICE—REVOCATION OF LICENSE—POWERS OF BOARD. The act regulating the practice of medicine, and the right of appeal from decisions of the director of licenses granting or revoking licenses, given by Rem. Comp. Stat., § 10017 of the act, and by § 10864 of the administrative code, applies to the director's refusal to reinstate a physician upon his pardon after conviction of crime involving moral turpitude and revocation of his license because of such conviction.

[1]Reported in 231 Pac. 18.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered July 28, 1924, in favor of the plaintiff, in an action to compel the state board of medical examiners to reinstate plaintiff as a practicing physician and surgeon, after a hearing on the merits to the court. Reversed.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellant.

*Arthur H. Hutchinson,* for respondent.

Bridges, J.—On May 4, 1915, the respondent, being then a licensed physician and surgeon in this state, was convicted of the crime of abortion, and the judgment was affirmed by this court. *State v. Russell,* 90 Wash. 474, 156 Pac. 565. A short time after her conviction, a complaint was filed with the board of state medical examiners, calling attention to the conviction and asking that her license be revoked. After a hearing before the board, and on September 13, 1915, an order was entered revoking the license, such action being in accordance with § 10015, Rem. Comp. Stat. [P. C. § 3738], which provides for revocation of license on "conviction of any offense involving moral turpitude, .   .   .  ." Mrs. Russell appealed to the courts from this order, but the action of the board was upheld. About a year after the revocation of her license, the governor of this state issued to her a pardon, which went into effect on October 7, 1916.

After the issuance of the pardon, and during the year 1916, she petitioned the board to revive her license and reinstate her in the right to practice her profession, such request being based on the ground that the pardon had the legal effect of annulling the revocation. The board refused to reinstate her. Again, some two or three years ago, she made a similar application to the board, which met the same fate as the former.

In June of this year she petitioned the superior court
of King county for a writ of mandate ordering the di-
rector of licenses (who under the administrative code
now performs the duties formerly imposed upon the
board of state medical examiners) to either enter her
name as a regularly licensed and practicing physician
and surgeon or to show cause why he should not do
so. The petition for the mandate recited the facts
we have heretofore stated. The director of licenses
demurred to the petition, and, without waiving it,
answered. The trial court overruled the demurrer, and
after a hearing on the merits, entered a decree which
ordered the board of medical examiners to "forthwith
correct their records and re-enter the name of Annie K.
Russell as a regularly licensed and practicing phy-
sician of the state of Washington," and that they be
permanently enjoined and restrained from interfering
with her in the practice of her profession. From this
decree the director of licenses (who has been substi-
tuted in the stead of the board of medical examiners)
has appealed.

We are at once met with the proposition advanced
by the *Attorney General* that the respondent has no
right to the writ of mandate because she had, and has,
an adequate remedy by appeal.

We have so often held that a writ of mandate will
not issue if there is a plain, speedy and adequate
remedy by appeal that we deem it unnecessary to cite
the cases on that question.

In 1909, the legislature passed a comprehensive act
with reference to the practice of medicine and surgery
in this state. Rem. Comp. Stat., § 10008 *et seq.* [P. C.
§ 3732]. It provided that no person should practice
medicine and surgery without first having a certificate
issued by the board of state medical examiners. It
undertook to cover the whole field with reference to

the granting, suspending and revoking of licenses. One section (§ 10017, Rem. Comp. Stat.) [P. C. § 3740], provides that:

"in any case of the refusal or revocation of a license by said board under the provisions of this act, the applicant whose application shall be refused, and the licentiate whose license shall be so revoked by said board, shall have the right to appeal from the decision so refusing or revoking such license within thirty days after the filing of such decision in the office of the secretary of said board, as hereinbefore in this chapter provided."

The section proceeds to set out the particular manner of appeal and provides that, on the appeal, the case "shall stand for trial in all respects as ordinary civil actions. . . Upon such appeal said cause shall be tried de novo." In 1921, the legislature passed the administrative act (Rem. Comp. Stat., § 10759 *et seq.*) [P. C. § 4-1]. It imposed upon the director of licenses the duties previously performed by the board of state medical examiners, and § 10864 [P. C. § 4-106], provides that:

"Any person feeling himself aggrieved by the refusal of the director of licenses to issue any license provided for in this act, or to renew the same, or by the revocation or suspension of any license issued under the provisions of this act or any law being administered under this act, shall have a right of appeal from the decision of the director of licenses to the superior court of Thurston county, which appeal shall be taken, prosecuted, heard and determined, as near as may be, in the manner provided by law for taking, prosecuting, hearing, and determining appeals from justices' courts to superior courts."

It also provides that upon appeal the court shall proceed in the same manner as in original actions.

It is not necessary for us to determine, nor is the question argued here, whether the provisions with ref-

erence to appeal under the 1909 act or those under the 1921 act are applicable, because they are substantially the same in so far as they serve the purposes of this case.

The respondent contends that the right of appeal given by the statute does not apply to facts such as exist here, but applies only where the license is refused in the first instance, or where renewal is refused or where a license is revoked or suspended. If the act be strictly construed and the words held to their narrow meaning and no effort is made to get at the legislative purpose, it may be that the board of state medical examiners was given power only to issue or refuse to issue original certificates and renewals thereof and suspend and revoke licenses. But it will not do to read the statute too strictly. We must get at the legislative intent. Taking the acts as a whole, it is plain that the legislature intended to vest in the board of state medical examiners full and complete power over the right to practice medicine and surgery in this state, and that is the question involved here. It also seems plain that a right of appeal was given from any order which the board was entitled to make.

Respondent's argument would lead to her own destruction, because if we give the statute the narrow construction contended for by her, then the demurrer to the petition for the writ of mandamus should have been sustained, because the board of examiners and the director of licenses would have no power to do the things which the relator is demanding of them, and consequently could not be compelled to perform them.

But we have no doubt that the board of examiners, during its regime, had, and the director of licenses now has, power under the statute to act upon the facts existing here; and since a right of appeal is intended to be given from any and all actions of the board or

director, it must follow that respondent had a clear right of appeal from the refusal of the board to reinstate her. Appeal statutes are remedial in their nature and should be liberally construed. If respondent had appealed from the action of the board we would certainly not have thrown her out of court, because so to do would have been to stick in the surface of the question and not go to its heart.

Nor is the right of appeal inadequate, for such delay as would have occurred in that connection would not be unreasonable under the circumstances. Besides this, upon appeal the court would have full power to go into the merits of the controversy, because the statute provides that such matters shall be tried *de novo* as civil actions are.

The demurrer should have been sustained. The judgment is reversed and the cause remanded with directions to dismiss the action.

MAIN, C. J., TOLMAN, MITCHELL, and PARKER, JJ., concur.